## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) CRIMINAL NO. 19-CR-3113-JB |
| | ) |
| vs. | ) |
| | ) |
| **ROBERT PADILLA**, a.k.a. "**Fat Head**," | ) |
| | ) |
| Defendant. | |

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT ROBERT PADILLA'S MOTION FOR DISCLOSURE AND PRODUCTION OF CONFIDENTIAL INFORMANTS

The United States of America, through its undersigned counsel, hereby responds in opposition to Defendant Robert Padilla's Motion for Disclosure and Production of Confidential Informants. Doc. 240. The Defendant avers he "may call the confidential sources (CSs) as possible witnesses at the trial in this case." Doc. 240 at 1 (emphasis added). The Defendant goes on to state that "the aforementioned CSs may possess exculpatory evidence as to Defendant. *Id*. As a basis for his extensive request, the Defendant relies upon *Giglio v. United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) and *Roviaro v. United States*, 353 U.S. 53, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957). The United States respectfully requests that the Court deny the defendant's motion.

The United States objects to the request, as the defendant fails to show any informant's testimony is relevant or essential to the fair determination of defendant's case. Further, the United States is unaware of any exculpatory material regarding the defendant in this case and affirms that it has and will continue to comply with its obligations under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *Giglio*, 405 U.S. 150; and *Weatherford v.*

*Bursey*, 429 U.S. 545, 97 S. Ct. 837, 51 L. Ed. 2d 30 (1977).  Nonetheless, the Defendant requests the full name and occupation of each CS; whether the informer was a citizen or police informer; what consideration, if any, each CS received or will receive for cooperation and/or testimony; the training and experience of each CS with drug traffickers; the narcotic or controlled substance history and habit of each CS; any psychiatric history for each CS; the criminal history, including probation and parole status of each CS; any and all statements, in addition to the agent reports, that are material to this case and which should be disclosed to Defendant; identification of prior testimony; and details or disclosure or reports regarding any prior investigations involving each CS or the co-defendant. Doc. 240 at 2.

## LEGAL ARGUMENT

There is no general constitutional right to discovery in a criminal case. *Weatherford*, 429 U.S. at 559. The government, however, is obligated to make disclosures required by the Federal Rules of Criminal Procedure and by due process. *See* Fed. R. Crim. P. 16. The Due Process Clause requires that the United States disclose to the defendant any evidence that "is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The Supreme Court of the United States has extended the prosecution's disclosure obligation to include evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory. *See Giglio*, 405 U.S. at 153; *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009) ("[N]o distinction is recognized between evidence that exculpates a defendant and 'evidence that the defense might have used to impeach the [United States'] witnesses by showing bias and interest.' " (quoting *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985)); *United States v. Abello-*

*Silva*, 948 F.2d 1168, 1179 (10th Cir. 1991) ("Impeachment evidence merits the same constitutional treatment as exculpatory evidence.").

"The Constitution, as interpreted in *Brady,* does not require the prosecution to divulge every possible shred of evidence that could conceivably benefit the defendant." *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d 801, 823 (10th Cir. 1995). The Supreme Court held that the government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *United States v. Rivas*, 26 F. Supp. 3d 1082, 1113 (D.N.M. 2014) (quoting *Roviaro*, 353 U.S. at 59. "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro*, 353 U.S. at 59; *Usery v. Local Union 720, Laborers' Int'l Union of N. Am., AFL-CIO*, 547 F.2d 525, 527 (10th Cir. 1977) ("Anonymity of informants encourages communications to law enforcement officers.").

The privilege is not absolute, however, and where "the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60–61. When an informant is a "participant in and a material witness to" the alleged criminal transaction, the disclosure of his or her identity is sometimes required. *Roviaro*, 353 U.S. at 65. The standard for disclosure of CIs who play an active, as opposed to a passive, role in the investigation is not fixed; rather, the court must consider: "(1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Roviaro*, 353 U.S. at 62; *United States v. Gordon*, 173 F.3d 761, 767 (10th Cir. 1999) (In balancing these

3

interests, the Court must consider the crime charged, the possible defenses, and the significance of the informant's testimony).

"A defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case. In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense." *Gordon*, 173 F.3d at 767 (citing *Roviaro*, 353 U.S. at 62). "[T]he defendant must present more than mere speculation about the possible usefulness of an informant's testimony." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990). The "[d]isclosure of an informant is not required . . . where the informant is not a participant in or a witness to the crime charged." *Id.*; *See United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987); *United States v. Halbert*, 668 F.2d 489, 496 (10th Cir. 1982). Thus, disclosure is not required when the confidential informant is a "tipster" rather than an active participant in the criminal activity charged. *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986). "Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure." *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997).

### A. Defendant's speculative claim must fail

In this case, the defendant's claim must fail, as he can only speculate that any particular CS <u>may</u> possess exculpatory material, and <u>may</u> be called as a witness. The Tenth Circuit has held that "mere speculation about the usefulness of an informant's testimony is not sufficient" to compel disclosure. *Scafe*, 822 F.2d at 933 (citations omitted); *see also United States v. Ortiz*, 804

F.2d 1161, 1167 (10th Cir. 1986) ("a defendant must do more than speculate about the usefulness of information about an informer") (citations omitted).

Moreover, the onus is on the defendant to show any informant's testimony is relevant or essential to the fair determination of defendant's case. Here, the defendant's argument fails. The defendant's speculative request seeks a litany of information about every CS used during the entire investigation, to include CSs who will not be witnesses in the government's case-in-chief. The investigation of this case spanned nearly two years, and involved the Drug Enforcement Administration (DEA), the U.S. Marshals, the Internal Revenue Service (IRS), the Federal Bureau of Investigation (FBI), and the New Mexico State Police (NMSP). While confidential sources were used at various stages of the investigation, the defendant's request is impermissibly broad, and the defendant fails to make the requisite showing that any CS testimony is relevant or essential to the fair determination of defendant's case.

For example, through a confidential source (CS), an undercover officer (UC) was introduced to co-defendant Robert Hockman. On August 27, 2018, the United States sought and obtained authorization to intercept Hockman's wire and electronic communications over HOCKMAN PHONE 2. The Affidavit for HOCKMAN PHONE 2 sets forth the full name of a person identified as CS-1. On July 18, 2017, a Region 2 Narcotics Task Force Agent, acting in an undercover capacity, drove a Region 2 CS (CS-2) to a location to meet with Hockman to complete a CS-controlled purchase of methamphetamine. This controlled purchase was not charged in the instant indictment. In each of the aforementioned instances, the CS will not be called in the government's case-in-chief. Each of these events occurred outside the date of the conspiracy charged in Count 1 of the Indictment. In each instance, the defendant fails to show

that any of these individuals have any relevant and exculpatory information relating to the defendant.

### B. Basis of indictment is misstated by the defendant

Next, the defendant erroneously asserts that "the government's ability to indict Mr. Padilla is materially predicated and dependent upon statements made by these confidential informants/witnesses."[1] Doc. 240 at 3. The defendant misstates the evidence. The defendant is charged in Counts 1, 3-5, 11, 12, and 14-19 of the 19-count indictment. Count 1 of the Indictment indicates that this conspiracy began on or about September 17, 2018. On that date, a UC ordered a large quantity of cocaine from co-defendant Hockman. Hockman then called the defendant and placed the order for cocaine. That call was intercepted over HOCKMAN PHONE 2.

On October 11, 2018, the United States sought and obtained authorization to intercept the defendant's wire and electronic communications over PADILLA PHONES 1 and 2. The interception over PADILLA PHONE 1 featured hundreds of pertinent calls demonstrating that the defendant is a leader and organizer of a large-scale, poly-drug trafficking organization. The defendant spoke openly about drug trafficking, evading law enforcement, perceived cooperators, and used terms commonly used by drug traffickers (white, soft, hard, black, clear, blues, etc.). The defendant even provided instructions to his underlings on how to cook crack from cocaine,

---

[1] It is difficult to determine whether the defendant is seeking to compel the disclosure of any perceived post-arrest statements by co-defendants. The United States will not confirm or dispel the defendant's notion that such materials exist. The United States takes the position that in cases where such information exists, said statements are not co-conspirator statements, as the statements fall outside the scope of the conspiracy. Further, Rule 16 entitles a defendant access to his/her own statements, but does not similarly entitle him/her to the statements of her co-conspirators. *See* Fed. R. Crim. P. 16(a)(1)(A); *United States v. Lujan*, No. 05-CR-924 RB, 2008 WL 11359112 at *2 n.4 (D.N.M. Oct. 21, 2008).

how to package drugs for further distribution, how to weigh drugs and zero out a scale, and how to conduct a quick drug/money exchange between two vehicles.

The ease with which the defendant communicated with his indicted and unindicted co-conspirators can be seen when examining the intercepted calls beginning October 17, 2018, through November 8, 2018. During that timeframe, on October 25, 2018, the defendant accepted delivery of 2000 fentanyl pills. The delivery was observed by surveillance, captured by video, and resulted in the seizure of the delivery vehicle when the source abandoned it after he detected law enforcement. A drug detection dog alerted to the odor on the vehicle, but no drugs or money were located. Nonetheless, the intercepted communications are clear regarding the quantity, and the delivery. The calls after the delivery reveal the defendant claimed he had just received "a shitload of pills," and was busy distributing them to all his underlings, to include co-defendant Tomas Sanchez, a.k.a. "TJ," (hereinafter, TJ). In the days prior to the pill delivery, TJ had ordered both cocaine, referring to it as "white," and fentanyl pills.

On November 8, 2018, during an intercepted call, TJ told the defendant about the death of his girlfriend, later identified as C.M. In the weeks prior to that call, numerous calls were intercepted between the defendant and TJ, demonstrating that the defendant provided and cocaine to TJ for redistribution. TJ relayed his belief that his girlfriend had died from a fentanyl overdose after taking pills from his stash. In strong terms, the defendant told TJ that he better not say that again. The defendant ceased using PADILLA PHONE 1 the next day. Law enforcement obtained the autopsy report, which concluded C.M. died from a toxic combination of cocaine and fentanyl.

Based on the information obtained over PADILLA PHONES 1 and 2, as well as other investigative efforts, on December 13, 2018, the United States sought and obtained authorization

for the interception of PADILLA PHONE 3 and SOS-2 PHONE 1. While using PADILLA PHONE 3, the defendant described to multiple people the circumstances of C.M.'s overdose death, as well as the dangers of fentanyl.

On or about March 8, 2019, as amended on March 14, 2019, the United States sought and obtained authorization for the interception of PADILLA PHONES 4, 5 and 6, ROMERO PHONE 1, and the PADILLA CAMERA SYSTEM.  Through the interception of PADILLA PHONE 6, on March 15, 2019, co-defendant Marcos Ruiz, one of the defendant's distributors, placed a call to the defendant complaining about the quality of cocaine the defendant provided to him. Specifically, Ruiz complained that the cocaine would not yield the proper weight of crack cocaine. The defendant immediately called his source of supply to discuss the quality of the cocaine. As it turned out, Ruiz was mistaken; the defendant cooked crack from the same cocaine batch and then sent a picture to Ruiz the same day, thereby proving the quality of the cocaine.  In addition to the communications, the photograph was intercepted.

On or about April 1, 2019, agents used the intercepted communications over PADILLA PHONE 6 to interdict a load after the defendant supplied cocaine to another person. The meeting between the defendant and the recipient of the drugs was documented with photographs and surveillance.  Following the meeting, the New Mexico State Police stopped the vehicle driven by the recipient of the drugs. A drug-sniffing canine alerted to the vehicle, and agents discovered six ounces of cocaine in a suitcase in the trunk of the vehicle.

The aforementioned activities give rise to several counts in the indictment.  Thus, the defendant's suggestion that the indictment against the defendant relies upon CS testimony is without merit.

### C. Discovery provided vets CSs

The defendant suggests that his ability to defend himself against inculpatory statements rests with this requested disclosure, and that agent reports will describe CS participation in the alleged criminal activity that is unique to each CS. Doc. 240 at 3. In this case, the defendant has been provided thousands of pages of discovery materials, to include agent reports, Title III materials for several intercepted telephones and the defendant's security system. Accompanying the intercepts are summary line sheets reflecting the content of intercepted calls, and transcripts of select calls. Accompanying the wiretap intercepts are applications, affidavits and orders signed by a United States District Court Judge allowing the requested interceptions. Contained in the affidavits are the qualifications for any CS relied upon for probable cause contained in each affidavit. The qualification materials contain a summary of the criminal history of each CS, as well as the reasons each CS is believed to be reliable. Moreover, each affidavit describes the involvement of each CS in detail. The defendant has been provided with ample materials to assess the credibility of any CS relied upon in the wiretap affidavits, and to defend against any inculpatory statement by a CS, should one be deemed a necessary witness in the government's case-in-chief. Otherwise, such inculpatory statements would be hearsay and would be inadmissible.

The defendants have filed a motion to extend all of the current deadlines, and the current trial setting. The proposed new trial date is October, 2021. Should the United States determine that CS testimony is necessary in the government's case-in-chief, it will promptly comply with the disclosure requirements pursuant to obligations under *Brady*, 373 U.S. 83, *Giglio*, 405 U.S. 150; *Weatherford*, 429 U.S. 545; and the Jencks Act, 18 U.S.C. § 3500.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*/s/ electronically filed September 4, 2020*
ELAINE Y. RAMÍREZ
ROBERT I. GOLDARIS
Assistant United States Attorneys
P.O. Box 607
Albuquerque, NM 87103

(505) 346-7274

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2020, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.


_____*/s/*_____
Elaine Y. Ramírez
Assistant United States Attorney