IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                                                                                                                                   No. 1:19-cr-03113-JB

ROBERT PADILLA, et al.,

        Defendants.

**DEFENDANT'S MOTION TO SUPPRESS INVOLUNTARY STATEMENT**

Defendant Robert Padilla, through counsel, ROMERO & WINDER, P.C. (Joe M. Romero, Jr.), and moves this Court to suppress the statements he made to investigating officers while undergoing custodial interrogation on or about October 19, 2019. As grounds, Defendant states:

**RELEVANT FACTUAL BACKGROUND**

1. On September 19, 2019, at approximately 12:45 a.m., Deputy United States Marshals arrested Robert Padilla in Albuquerque, New Mexico, on an outstanding federal arrest warrant. See Warrant Return (Executed), 1:19-cr-03113-JB, Document 18, Filed 09/19/1; *Exhibit A*: FD-302 for Interview of Robert Padilla.

2. Mr. Padilla was apprehended outside a bar (Sunset Grill and Bar, located at 6825 Lomas Blvd. NE) in Albuquerque.

3. Following Mr. Padilla's arrest, FBI Agent Bryan Acee was notified of the arrest and he and FBI Agent Nancy Stemo responded to the U.S. District Courthouse in Albuquerque, to interview Padilla. *Exhibit A*.

4. At the time of the interrogation by the investigators, Mr. Padilla was advised that he was under arrest for violations of the Controlled Substances Act, but he was also told that he was a suspect in the murder of Leroy "Smurf" Lucero.

5. At the time of the interrogation, Mr. Padilla was in police custody. It is alleged that Agent Acee and/or Stemo advised Mr. Padilla of his constitutional rights per *Miranda*, and presented Mr. Padilla with a form entitled "Advice of Rights." Mr. Padilla allegedly refused to sign the form.

6. The absence of a written acknowledgement is a factor that the Court should consider in determining the legal effectiveness of Mr. Padilla's purported waiver of his Miranda rights and agreement to submit to questioning without the assistance of an attorney.

7. The interrogation was audio recorded. Upon information and belief, the only individuals present were Mr. Padilla, Bryan Acee, and Nancy Stemo.

8. Mr. Padilla was interrogated by the agents immediately after being arrested outside a nearby bar. Mr. Padilla had not eaten any food and was still under the obvious influence of alcohol. Mr. Padilla will testify as to his own intoxication and disorientation.

9. During the interrogation, Mr. Padilla denied having any involvement in this death of Leroy Lucero. *Exhibit A*.

10. He provided alibi information and alerted the agents to likely video footage that would exonerate him in the murder of Mr. Lucero. *Exhibit A*.

11. Mr. Padilla was also accused by the agents of having been involved on a close friend's death as the result of a drug overdose. *Exhibit A*.

12. That friend, Joe Leyba, was described by Mr. Padilla as his "best friend." *Exhibit A*.

13.     The Government has never charged Mr. Padilla with the murder of Mr. Lucero, Mr. Leyba, or anyone else.

14.     The threat of being prosecuted for the murder of a federal witness—a crime that could result in a death sentence—was made to Mr. Padilla while he was highly intoxicated. *Exhibit A*.

15.     In the course of drunkenly defending himself against allegations that he had murdered two of his friends on separate occasions, Mr. Padilla also made statements that the government seeks to use against him in this case—a case that only involves the claim that Mr. Padilla sold narcotics contrary to the Controlled Substances Act (CSA).

## LEGAL ANALYSIS

***Mr. Padilla's Waiver of his Fifth Amendment Rights was Not Voluntarily and Knowingly Made. It was the Result of Heavy Intoxication.***

The Court should suppress the statements that Defendant made because of the high degree of intoxication he was under while being interrogated. As a result of that high level of intoxication, the statements elicited from Mr. Padilla were obtained in violation of the Fifth Amendment to the United States Constitution, which guarantees that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. amend. V. The privilege against self-incrimination "is fulfilled only when the person is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will.'" *Miranda v. Arizona*, 384 U.S. 436, 460 (1966)(*quoting Malloy v. Hogan*, 378 U.S. 1, 8 (1964)). To help effectuate this guarantee, the Supreme Court in *Miranda v. Arizona* required the police to inform suspects of certain rights before subjecting them to custodial interrogation. 384 U.S. 436, 444, 478-79 (1966).

Miranda provides that where a suspect has been advised of his rights against self-incrimination, he may waive those rights "provided the waiver is made voluntarily, knowingly,

and intelligently." *United States v. Hernandez*, 913 F.2d 1506, 1509 (10th Cir. 1990) (*quoting Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). In order for there to be a valid waiver, two requirements must be met: (1) the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception; (2) the waiver must have been made with a full awareness of both the nature of the right being abandoned and consequences of the decision to abandon it. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). A court is to determine the particular factual context of the waiver, including the background, experience and conduct of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938).

### *Mr. Padilla's Waiver of his Fifth Amendment Rights was Not Voluntarily and Knowingly Made. It was the Result of Being Threatened with Two Murder Prosecutions for Murders He Did Not Commit.*

Use of a confession that was extracted by any sort of threats or violence or obtained by any direct or implied promises, however slight, or by the exertion of any improper influence would violate Mr. Padilla's rights to due process of law. U.S. Const. Amend. V.; *Miller v. Fenton*, 474 U.S. 104, 109-10 (1985); *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964); *Hutto v. Ross*, 429 U.S. 28 (1976) (per curiam); *Malloy v. Hogan*, 378 U.S. 1 (1964). Some form of coercive police action is required before a due process violation occurs. *Colorado v. Connelly*, 479 U.S. 157, 164 (1986). The Tenth Circuit has held that whether a confession is coerced depends upon several factors: (1) the age, intelligence and education of the defendant; (2) the length of the detention; (3) the length and nature of the questioning; (4) whether defendant was advised of his constitutional rights; (5) whether defendant was subjected to physical punishment. *United States v. Padilla*, 146 F.3d 1232, 1239-40 (10th Cir. 1998) (*citing Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). This determination is based upon the totality of the surrounding circumstances, and no single factor is

4

determinative. *Id*. The government bears the burden of proving voluntariness by a preponderance of the evidence. *United States v. Falcon*, 766 F.2d 1469, 1476 (10th Cir. 1985).

Informing an accused that he is the prime suspect in not one, but *two* murder cases and that the agents believed that Mr. Padilla was a double murderer, amounts to coercive police action. At the time of his interrogation, Mr. Padilla was still intoxicated and withdrawing from prolonged alcohol consumption. He was extremely upset, and emotionally vulnerable. Law enforcement investigators unfairly exploited this vulnerability to their advantage, by telling Mr. Padilla that they were investigating him for these murders. The threat of two murder cases, one for a purported government witness, made to intoxicated individual who a) was only arrested for narcotics charge, b) had an alibi that has since borne out, while he was c) heavily intoxicated was the type of coercive intimidation that Miranda seeks to prevent.

***Combined, the Result Requires that Mr. Padilla's Statement be Suppressed.***

In the case there is no dispute that Mr. Padilla was in custody at the time he made the statements. He had been arrested immediately prior to the statement, outside a bar.  He had been placed in handcuffs, formally arrested, and transported in the "cage" of a police vehicle. Defendant expects that the government will not contest the assertion that Mr. Padilla was in custody when he made the disputed statement. However, at a hearing on this Motion, Mr. Padilla will establish that at the time he was placed under arrest and thereafter, he was heavily intoxicated and as such did not understand the Miranda warning. The administration of Miranda warnings does not establish either that a suspect knowingly and intelligently waived Miranda or that any post-warning statements were voluntarily made. *Dickerson v. United States*, 530 U.S. 428, 444 (2000)("The requirement that Miranda warnings be given does not... dispense with the voluntariness inquiry.");

5

*see also Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A suspect who has been advised of his right against self-incrimination may waive that right "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. To assess whether the waiver of Miranda rights was knowing, courts must ascertain whether the defendant had a "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Cardwell*, 433 F.3d 378, 389 (4th Cir. 2005)(*quoting Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

The government bears the burden of establishing, by a preponderance of the evidence, that the statement was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972). With regard to this inquiry, courts are to consider the totality of the circumstances, including the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987)(*quoting United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980)); *see also Miranda*, 384 U.S. at 475; *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973); *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997). Like any multi-factor test, not all factors must favor one party. *United States v. Digiovanni*, 650 F.3d 498, 514 (4th Cir. 2011)(holding under the totality of the circumstances that defendant's written consent was involuntary even though not all factors weighed in favor of defendant). "An incriminating statement is deemed involuntary only if induced by such duress or coercion that the suspect's 'will has been overborne and his capacity for self-determination critically impaired.'" *United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir. 1987)(*quoting Schneckloth*, 412 U.S. at 225).

Even if a waiver of Fifth Amendment rights was voluntary, that does end the inquiry, as a waiver is not valid unless it was also knowingly and intelligently made. "Unlike the issue of voluntariness, police overreaching (coercion) is not a prerequisite for finding that a waiver was not

knowing and intelligently made." *United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002)(*citing Moran v. Burbine*, 475 U.S. at 421). Various factors may cause a statement to be involuntarily made, including a defendant's intoxication. Although the consumption of alcohol will not automatically render subsequent statements involuntary, the relevant inquiry is whether the suspect's degree of intoxication deprives him of the "rational intellect and free will" necessary to make a voluntary and knowing waiver of Fifth Amendment rights. *Boggs v. Bair*, 892 F.2d 1193, 1198 (4th Cir. 1989). As the Boggs Court noted, the relevant standard was set forth in the Supreme Court's decision in *Townsend v. Sain*:

> If an individual's 'will was overborne' or if his confession was not 'the product of a rational intellect and free will,' his confession is inadmissible because coerced. These standards are applicable whether a confession is the product of physical intimidation or psychological pressure and, of course, are equally applicable to a drug-induced statement.

372 U.S. 293, 307 (1963)(*cited in Boggs*, 892 F.2d at 1198).

 A review of cases rejecting claims of that statements were involuntary because of alcohol consumption is illuminating, as courts routinely note the absence of reliable indicia of intoxication as evidence that the statements were voluntarily made. In *Boggs*, for example, the testimony at the suppression hearing established that although the defendant smelled of alcohol, and his eyes were bloodshot and "perhaps glazed," that he also walked without staggering and talked coherently. More significantly, numerous officers testified that the defendant was sober during the nearly six-hour period between his arrest and questioning, pointing to evidence that Mr. Boggs had provided a "detailed response, which was completely exculpatory and perfectly rational" in response to initial inquiries made four hours before the statements he sought to suppress. *Boggs*, 892 F.2d at 1198.

In this case the time between Mr. Padilla's drinking at the bar and the interrogation was not hours. He was essentially taken from the Sunset Grill and Bar, located at 6825 Lomas Blvd. NE to the federal courthouse at 333 Lomas Blvd. NW, a total distance of less than five miles. Mr. Padilla's interrogation began as soon as Agents Acee and Stemo arrived at the courthouse.

The Boggs Court thus concluded that, apart from the defendant's own testimony, "there simply was not any evidence at all to support the claim that Boggs was so intoxicated that his confession was not the product of his rational intellect and free will." *Id*. The difference in the factors relied upon in Boggs and those present in this case strongly support Mr. Padilla's claim that his interrogation was the tainted result of his will being overborne by the threat of multiple murder charges and his ability to knowingly and intelligently waive his Miranda rights being compromised by his heavy intoxication.

This Court reached a similar conclusion in *United States v. Snow*, 14 Fed.Appx. 218, *220 (4th Cir. 2001), based on evidence that the defendant had provided a detailed statement, requested an attorney, executed two waivers of his rights, and reviewed and signed a written statement. When testifying at his suppression hearing, the defendant testified that he understood the questions the police asked and did not testify that the alcohol he consumed prevented him from understanding the waivers he signed. *Id*. In this case, Mr. Padilla is expected to testify to the contrary. Similarly, in *Grayson v. Thompson*, the Eleventh Circuit Court of Appeals noted:

> Sergeant Pratt testified that he did not smell alcohol on Grayson or see any other indications of alcohol or drug use. Grayson was not slurring his speech and the only time that Pratt experienced difficulty understanding Grayson during his interviews was when Grayson lowered his head and talked "straight to the floor." ... He described Grayson's general demeanor as "normal," although he admitted that Grayson appeared nervous a few times and became fidgety. The transcripts of Grayson's statements also do not suggest that he was intoxicated or suffering from alcoholic withdrawal at the time. Further, these transcripts demonstrate the officers' repeated and exhaustive efforts to apprise Grayson of his rights and to ensure that his statements were voluntarily given.

257 F.3d 1194, 1230 (11th Cir. 2001).

In contrast to these cases, the record here is very clear that Mr. Padilla was substantially impaired by alcohol, there is a contemporaneous recording that the Court may review in support of Defendant's Motion to consider the various indicators of intoxication, and Defendant himself will testify that he was very heavily inebriated.

Mr. Padilla was driven directly from the bar to the holding cells at the courthouse, whereupon two FBI agents arrived to interrogate him. Those agents began that interrogation with accusations of murder. In this context and considering all of the relevant factors in this case supports Mr. Padilla's request that the Court suppress the statement he gave to Agents Acee and Stemo. That is, while highly intoxicated Mr. Padilla was threatened with the possibility of facing two murder charges and the resulting statement was not voluntary, knowing, or intelligent and therefore did not amount to a legally sufficient waiver of Mr. Padilla's Fifth Amendment rights. Under the totality of the circumstances, the statement taken from Mr. Padilla was not voluntary. The statements were instead the product of inherently coercive police action, and were obtained when Mr. Padilla was most susceptible to coercion: intoxicated, distraught, confused. As such, these statements should be suppressed.

AUSA Elain Ramirez opposes this motion.

WHEREFORE, for the foregoing reasons, Mr. Padilla respectfully requests this Court grant Mr. Padilla's Motion to Suppress and to exclude statements he made to investigating officers while undergoing custodial interrogation on or about October 19, 2019.

                                                                                                  Respectfully Submitted,

By:    */s/ Joe M. Romero, Jr.*
        Joe M. Romero, Jr.
        Romero & Winder, PC
        Attorney for Robert Padilla
        P.O. Box. 25543
        Albuquerque, N.M. 87125
        (505) 843-9776
        EM: joe@romeroandwinder.com

## Certificate of Service

I hereby certify that, on December 30, 2020, the foregoing pleading was filed electronically pursuant to CM/ECF procedures for the District of New Mexico, which caused the parties and/or their counsel to be served by electronic transmission, as more fully reflected by the Notice of Electronic Filing.

*/s/ Joe M. Romero, Jr.*
Joe M. Romero, Jr.